# Appendix B

TENDERED
FOR FILING

MAY 0.8 2018

DEBORAH S. HUNT, Clerk

## No. 17-3211

In The

## United States Court of Appeals

For the Sixth Circuit

FILED,

MAY 0·8 2018

DEBORAH S. HUNT, Clerk

BRIAN D. WILLIAMS,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division

## SUPPLEMENTAL BRIEF FOR THE UNITED STATES
## ON REHEARING EN BANC

JUSTIN E. HERDMAN
*United States Attorney*
*Northern District of Ohio*

REBECCA C. LUTZKO
*Assistant United States Attorney*
*Appellate Chief*

JOHN P. CRONAN
*Acting Assistant Attorney General*
*Criminal Division*

MATTHEW S. MINER
*Deputy Assistant Attorney General*
*Criminal Division*

MICHAEL A. ROTKER
*Attorney*

*United States Department of Justice*
*Criminal Division, Appellate Section*
*950 Pennsylvania Avenue, NW*
*Suite 1264*
*Washington, DC 20530*
*(202) 514-3308*
*michael.rotker@usdoj.gov*

# TABLE OF CONTENTS

                                                                    **Pages**

TABLE OF CONTENTS................................................................. i

TABLE OF AUTHORITIES ........................................................ iii

STATEMENT OF JURISDICTION......................................... 1

STATEMENT OF THE ISSUES ............................................... 2

STATEMENT OF THE CASE .................................................... 2

      A.    Statement of the Facts................................................. 3

      B.    Procedural History........................................................ 4

      C.    Ruling Under Review .................................................... 8

      D.    Post-Ruling Proceedings .............................................. 8

SUMMARY OF ARGUMENT ................................................... 9

ARGUMENT................................................................................ 14

I.    Section 2244(b)(1) Does Not Bar Williams's Current Section 2255
    Motion Because That Provision Is Limited To State Prisoners ............ 14

      A.    Background ..................................................................... 14

            1.    Early Practice ..................................................... 15

            2.    The Problems With Section 2241 ..................... 16

            3.    The 1948 Legislation ........................................ 18

            4.    The AEDPA ......................................................... 20

**Pages**

B.    Analysis ............................................................................. 23

    1.    Section 2244(b)(1) Does Not Apply To Federal
        Prisoners ....................................................................... 23

    2.    Regardless Of How Section 2255(h) Is Interpreted,
        Williams Is Not Entitled To Successive
        Section 2255 Relief ....................................................... 28

II.    Williams Did Not Meet His Burden Of Proving His Entitlement
To Successive Section 2255 Relief ...................................................... 38

A.    Background ........................................................................ 38

B.    Analysis ............................................................................. 40

    1.    *Johnson* Can Justify Orders Granting Authorization
        To File A Successive Section 2255
        Motion ........................................................................... 41

    2.    Williams's Motion Was Subject To Dismissal
        Under 28 U.S.C. § 2244(b)(4) ........................................ 44

    3.    Williams Did Not Meet His Burden Of Proving His
        Sentence Was Based Solely On The Residual Clause ........ 44

CONCLUSION ............................................................................. 55

CERTIFICATES OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Abuelhawa* v. *United States,*
556 U.S. 816 (2009) ............................................................ 31

*Alley* v. *Bell,*
392 F.3d 822 (6th Cir. 2004) ............................................. 39

*Babbitt* v. *Woodford,*
177 F.3d 744 (9th Cir. 1999) ............................................. 32

*Bannerman* v. *Snyder,*
325 F.3d 722 (6th Cir. 2003) ............................................. 19

*Beeman* v. *United States,*
871 F.3d 1215 (11th Cir. 2017) ..................................... 45-46, 48

*Bennett* v. *United States,*
119 F.3d 470 (7th Cir. 1997) ....................................... 25, 32, 34

*Black* v. *Carpenter,*
866 F.3d 734 (6th Cir. 2017) ...........................................46-47

*Bourjaily* v. *United States,*
483 U.S. 171 (1987) ......................................................... 45

*Brannigan* v. *United States,*
249 F.3d 584 (7th Cir. 2001) ...........................................32, 33

*Burlison* v. *United States,*
533 F.3d 419 (6th Cir. 2008) ............................................. 30

*Caspari* v. *Bohlen,*
510 U.S. 383 (1994) ......................................................... 52

**Pages**

*Central Bank* v. *First Interstate Bank,*
    511 U.S. 164 (1994) ......................................................... 25

*Charles* v. *Chandler,*
    180 F.3d 753 (6th Cir. 1999) (per curiam) ...........................25, 27

*Connally* v. *General Constr. Co.,*
    269 U.S. 385 (1926) ......................................................... 34

*Custis* v. *United States,*
    511 U.S. 485 (1994) ........................................................... 5

*Davis* v. *United States,*
    417 U.S. 333 (1974) ......................................................... 18

*Descamps* v. *United States,*
    570 U.S. 254 (2013) .....................................................*passim*

*Dimott* v. *United States,*
    881 F.3d 232 (1st Cir. 2018) ...........................................45, 48

*Dretke* v. *Haley,*
    541 U.S. 386 (2004) ......................................................... 36

*Dugger* v. *Adams,*
    489 U.S. 401 (1989) ......................................................... 34

*Elzy* v. *United States,*
    205 F.3d 882 (6th Cir. 2000) ............................................... 38

*Engle* v. *Isaac,*
    456 U.S. 107 (1982) ......................................................... 34

*Ex parte Bollman,*
    8 U.S. (4 Cranch) 75 (1807) ...........................................14, 15

**Pages**

*Ex parte Watkins,*
    28 U.S. (3 Pet.) 193 (1830) ...............................................................15, 16

*Felker* v. *Turpin,*
    518 U.S. 651 (1996) ............................................................... 15, 21, 43

*Gibbs* v. *United States,*
    655 F.3d 473 (6th Cir. 2011) ................................................................ 36

*Gonzalez* v. *Thaler,*
    565 U.S. 134 (2012) ............................................................................... 8

*Graham* v. *Collins,*
    506 U.S. 461 (1993) .............................................................................. 52

*Heflin* v. *United States,*
    358 U.S. 415 (1959) .............................................................................. 45

*Henderson ex rel. Henderson* v. *Shinseki,*
    562 U.S. 428 (2011) .............................................................................. 27

*Hill* v. *Masters,*
    836 F.3d 591 (6th Cir. 2016) ................................................................ 37

*In re Baptiste,*
    828 F.3d 1337 (11th Cir. 2016) ..................................................26, 31, 37

*In re Bowling,*
    422 F.3d 434 (6th Cir. 2005) ................................................................ 33

*In re Byrd,*
    269 F.3d 585 (6th Cir. 2001) ................................................................ 22

*In re Chance,*
    831 F.3d 1335 (11th Cir. 2016) .......................................................47, 48

**Pages**

*In re Conzelmann,*
  872 F.3d 375 (6th Cir. 2017) ...........................................................13, 43

*In re Embry,*
  831 F.3d 377 (6th Cir. 2016) .................................................................. 39

*In re Encinias,*
  821 F.3d 1224 (10th Cir. 2016) ............................................................. 42

*In re Hanserd,*
  123 F.3d 922 (6th Cir. 1997) ................................................................. 17

*In re Lipscomb,*
  408 F.2d 1003 (6th Cir. 1969) ............................................................... 18

*In re Moore,*
  830 F.3d 1268 (11th Cir. 2016) (per curiam) ........................................ 39

*In re Moss,*
  703 F.3d 1301 (11th Cir. 2013) ............................................................. 40

*In re Patrick,*
  837 F.3d 675 (6th Cir. 2016) ................................................................. 41

*In re Sims,*
  111 F.3d 45 (6th Cir. 1997) ..................................................................... 6

*In re Watkins,*
  810 F.3d 375 (6th Cir. 2015) ...........................................................27, 41

*INS* v. *St. Cyr,*
  533 U.S. 289 (2001) ............................................................................... 15

*(Curtis) Johnson* v. *United States,*
  559 U.S. 133 (2010) .......................................................................6, 32, 55

**Pages**

*(Samuel) Johnson* v. *United States,*
　135 S. Ct. 2551 (2015) ...............................................................*passim*

*Jordan* v. *Sec'y, DOC,*
　485 F.3d 1351 (11th Cir. 2007) ............................................................. 39

*Keeling* v. *Warden,*
　673 F.3d 452 (6th Cir. 2012) .................................................................. 8

*Kuhlmann* v. *Wilson,*
　477 U.S. 436 (1986) .........................................................................10, 20

*Lambrix* v. *Singletary,*
　520 U.S. 518 (1997) ............................................................................. 52

*Lewis* v. *United States,*
　445 U.S. 55 (1980) ................................................................................. 4

*Lindh* v. *Murphy,*
　96 F.3d 856 (7th Cir. 1996) (en banc),
　rev'd on other grounds, 521 U.S. 320 (1997) ......................................... 16

*Lindh* v. *Murphy,*
　521 U.S. 320 (1997) ..........................................................................28-29

*Martin* v. *Perez,*
　391 F.3d 799 (6th Cir. 2004) ............................................................... 37

*Marx* v. *General Revenue Corp.,*
　568 U.S. 371 (2013) ............................................................................. 27

*Mathis* v. *United States,*
　136 S. Ct. 2243 (2016) ...............................................................*passim*

*Mayle* v. *Felix,*
　545 U.S. 644 (2005) ............................................................................. 20

**Pages**

*McCleskey* v. *Zant*,
 499 U.S. 467 (1991) ...........................................................10, 16, 17, 20

*Metropolitan Stevedore Co.* v. *Rambo*,
 521 U.S. 121 (1997) ...............................................................45, 46

*Mohamad* v. *Palestinian Auth.*,
 566 U.S. 449 (2012) ..................................................................... 27

*Moleterno* v. *Nelson*,
 114 F.3d 629 (7th Cir. 1997) ................................................. 31

*Murr* v. *United States*,
 200 F.3d 895 (6th Cir. 2000) ................................................ 54

*New Jersey* v. *New York*,
 523 U.S. 767 (1998) ............................................................... 50

*Nijhawan* v. *Holder*,
 557 U.S. 29 (2009) ................................................................. 30

*Noriega* v. *Pastrana*,
 559 U.S. 917 (2010) ............................................................... 15

*Panetti* v. *Quarterman*,
 551 U.S. 930 (2007) ............................................................... 28

*Paulino* v. *United States*,
 352 F.3d 1056 (6th Cir. 2003) ................................... 12, 42-43

*Pough* v. *United States*,
 442 F.3d 959 (6th Cir. 2006) ............................................... 45

*Potter* v. *United States*,
 887 F.3d 785 (6th Cir. 2018) ...........................................*passim*

**Pages**

*Ring* v. *Arizona,*
    536 U.S. 584 (2002) .................................................................... 35

*Rumsfeld* v. *Padilla,*
    542 U.S. 426 (2004) .................................................................... 16

*Russello* v. *United States,*
    464 U.S. 16 (1983) ...................................................................... 24

*Salinger* v. *Loisel,*
    265 U.S. 224 (1924) .............................................................. 17-18, 19

*Samantar* v. *Yousef,*
    560 U.S. 305 (2010) .................................................................... 24

*Sanchez-Castellano* v. *United States,*
    358 F.3d 424 (6th Cir. 2004) ....................................................... 6

*Sanders* v. *United States,*
    373 U.S. 1 (1963) ................................................................*passim*

*Sattazahn* v. *Pennsylvania,*
    537 U.S. 101 (2003) .................................................................... 36

*Schaffer ex rel. Schaffer* v. *Weast,*
    546 U.S. 49 (2005) ...................................................................... 45

*Shomberg* v. *United States,*
    348 U.S. 540 (1955) .................................................................... 26

*Slack* v. *McDaniel,*
    529 U.S. 473 (2000) .................................................................... 42

*Smith* v. *Murray,*
    477 U.S. 527 (1986) .................................................................... 35

**Pages**

*Stone* v. *Powell,*
    428 U.S. 465 (1976) ................................................................. 18

*Teague* v. *Lane,*
    489 U.S. 288 (1989) (plurality opinion) ................................... 52

*Truesdale* v. *Moore,*
    142 F.3d 749 (4th Cir. 1998) .................................................. 31

*Tyler* v. *Cain,*
    533 U.S. 656 (2001) ...........................................................21, 40

*United States* v. *Addonizio,*
    442 U.S. 178 (1979) ................................................................. 18

*United States* v. *Anderson,*
    695 F.3d 390 (6th Cir. 2012) ..........................................*passim*

*United States* v. *Batchelder,*
    442 U.S. 114 (1979) ................................................................. 34

*United States* v. *Booker,*
    543 U.S. 220 (2005) .................................................................. 6

*United States* v. *Cotton,*
    535 U.S. 625 (2002) ................................................................. 16

*United States* v. *Frady,*
    456 U.S. 152 (1982) ...........................................................21, 49

*United States* v. *Gale,*
    468 F.3d 929 (6th Cir. 2006) .................................................. 51

*United States* v. *Geozos,*
    870 F.3d 890 (9th Cir. 2017) .............................................47, 48

**Pages**

*United States* v. *Hayman*,
   342 U.S. 205 (1952) ........................................................17, 18

*United States* v. *Levy*,
   904 F.2d 1026 (6th Cir. 1990) ........................................... 34

*United States* v. *Mitchell*,
   743 F.3d 1054 (6th Cir. 2014) .............................................. 5

*United States* v. *Osborn*,
   415 F.2d 1021 (6th Cir. 1969) ........................................... 45

*United States* v. *Page*,
   167 F.3d 325 (6th Cir. 1999) (en banc) ............................. 53

*United States* v. *Patterson*,
   853 F.3d 298 (6th Cir. 2017) ............................................. 41

*United States* v. *Perry*,
   360 F.3d 519 (6th Cir. 2004) ............................................. 53

*United States* v. *Snyder*,
   871 F.3d 1122 (10th Cir. 2017) .....................................51, 52

*United States* v. *Winston*,
   850 F.3d 677 (4th Cir. 2017) .........................................47, 48

*Velasquez* v. *United States*,
   4 F. Supp. 2d 331 (S.D.N.Y. 1998) ...............................23-24

*Villaneuva* v. *United States*,
   346 F.3d 55 (2d Cir. 2003) ................................................. 33

*Wainwright* v. *Sykes*,
   433 U.S. 72 (1977) .............................................. 16, 20, 31

**Pages**

*Welch* v. *United States*,
136 S. Ct. 1257 (2016) ...............................................................41, 55

*Williams* v. *Taylor*,
529 U.S. 420 (2000) ......................................................................30

*Williams* v. *United States*,
731 F.2d 138 (2d Cir. 1984) ..........................................................33

*Williams* v. *United States*,
875 F.3d 803 (2017),
vacated, 882 F.3d 1169 (6th Cir. 2018) ............................................1

*Waley* v. *Johnston*,
316 U.S. 101 (1942) ......................................................................17

*Wilson* v. *Sellers*,
138 S. Ct. 1188 (2018) ...................................................................31

*Wong Doo* v. *United States*,
265 U.S. 239 (1924) ......................................................................18

*Woodford* v. *Garceau*,
538 U.S. 202 (2002) ......................................................................30

*Wooten* v. *Cauley*,
677 F.3d 303 (6th Cir. 2012) .........................................................37

*Young* v. *United States*,
124 F.3d 794 (7th Cir. 1997) ......................................................43-44

**Pages**

**Constitutional Provisions, Statutes and Rules**

U.S. CONST. art. I, § 9, cl. 2 ................................................................ 16

Act of Feb. 5, 1867,
   ch. 28, § 1, 14 Stat. 385 ............................................................. 16

Antiterrorism and Effective Death Penalty Act of 1996,
   110 Stat. 1214 ................................................................*passim*

Judiciary Act of 1789,
   ch. 20, § 14, 1 Stat. 81-82 ........................................................ 15

18 U.S.C. § 922(g)(1) ................................................................2, 4, 7

18 U.S.C. § 924(a)(2) ....................................................................... 4

18 U.S.C. § 924(e) ........................................................................ 2, 3

18 U.S.C. § 924(e)(2)(B)(ii) ............................................................... 5

28 U.S.C. § 1291 ............................................................................. 2

28 U.S.C. § 1331 ............................................................................. 2

28 U.S.C. § 2241 ................................................................*passim*

28 U.S.C. § 2244(a) ..................................................................24, 26

28 U.S.C. § 2244(b)(1) .............................................................*passim*

28 U.S.C. § 2244(b)(2) .............................................................10, 24, 29

28 U.S.C. § 2244(b)(2)(A)-(B) .......................................................24, 29

28 U.S.C. § 2244(b)(3) ................................................................... 25

**Pages**

28 U.S.C. § 2244(b)(3)(A) ................................................................ 24

28 U.S.C. § 2244(b)(3)(C) ................................................................ 11

28 U.S.C. § 2244(b)(3)(E) ................................................................ 22

28 U.S.C. § 2244(b)(3)(A)-(D) ......................................................... 22

28 U.S.C. § 2244(b)(4) .................................................. 12, 22, 39, 40, 44

28 U.S.C. § 2254(b)(1) .................................................................... 23

28 U.S.C. § 2253(c) ......................................................................... 2

28 U.S.C. § 2253(c)(3) ..................................................................... 8

28 U.S.C. § 2255 ....................................................................*passim*

28 U.S.C. § 2255(a) ...................................................................23, 42

28 U.S.C. § 2255(h) .................................................................*passim*

28 U.S.C. § 2255(h)(1)-(2) .............................................................. 11

28 U.S.C. § 2255(h)(2) ..............................................................*passim*

Fed. R. App. P. 4(a)(1)(B)(i) ............................................................. 1

S. Rep. No. 1797, 89th Cong., 2d Sess. 2,
   1966 U.S.C.C.A.N. 3663, 3664 (1966) ......................................... 19

**Pages**

**Miscellaneous**

William S. Church, *A Treatise On The Writ of Habeas Corpus*
    § 386, p. 570 (2d ed. 1893) ....................................................................... 17

Brian R. Means, *Federal Habeas Manual*
    § 9B:3 (2017) ............................................................................................ 31

IN THE

# United States Court of Appeals

FOR THE SIXTH CIRCUIT

No. 17-3211

BRIAN D. WILLIAMS,

*Petitioner-Appellant,*

V.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

## SUPPLEMENTAL BRIEF FOR THE UNITED STATES ON REHEARING EN BANC

### STATEMENT OF JURISDICTION

Defendant Brian D. Williams appeals from a final judgment of the district court denying his successive motion to vacate his sentence under 28 U.S.C. § 2255 and granting him a certificate of appealability. Judgment was entered on February 28, 2017. R50: Judgment, PageID 411. Williams filed a notice of appeal on March 2, 2017, which was timely. R51: Notice of Appeal, PageID 412; see Fed. R. App. P. 4(a)(1)(B)(i). A three-judge panel affirmed, but the decision was vacated when the full Court granted Williams's petition for rehearing en banc. See *Williams* v. *United States*, 875 F.3d 803 (2017), vacated, 882 F.3d 1169 (6th Cir. 2018). The district court had jurisdiction under 18

U.S.C. § 3231 and 28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253(c).

## STATEMENT OF THE ISSUES

Following the grant of rehearing en banc, the Court entered two orders requesting supplemental briefing on nine questions of federal postconviction practice, all of which are encompassed by the following two issues:

1. Whether Williams's successive Section 2255 motion was subject to dismissal under 28 U.S.C. § 2244(b)(1).[*]

2. Whether Williams met his burden of proving that the sentencing court classified his Ohio felony assault conviction as a violent felony under the now-invalid residual clause of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (ACCA), when neither the sentencing record nor any case law then in effect suggests that the court relied on that clause.[**]

## STATEMENT OF THE CASE

In 2006, Brian Williams was convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 180 months' of imprisonment under the Armed Career Criminal Act of 1984, 18

---

[*] This issue covers questions 1 and 2 in both briefing orders.

[**] This issue covers questions 3, 4, and 5 in the March 9th briefing order and questions 3 and 4 in the March 20th briefing order.

U.S.C. § 924(e) (ACCA), because he had three prior "violent felony" convictions, including one for Ohio felony assault. Williams did not appeal, but between 2007 and 2014, he filed a number of motions to vacate his ACCA-enhanced sentence under 28 U.S.C. § 2255, all of which were dismissed or denied. In 2015, the Supreme Court held in *(Samuel) Johnson* v. *United States*, 135 S. Ct. 2551, 2557 (2015), that the residual clause in the ACCA's definition of a violent felony, one of that statute's three definitional clauses, was unconstitutionally vague. Williams sought and obtained this Court's permission to file another Section 2255 motion to challenge his ACCA-enhanced sentence based on that decision. The district court denied Williams's motion, holding that his ACCA status and sentence were unaffected by that decision because Ohio felony assault was a violent felony under the ACCA's still-valid elements clause under *United States* v. *Anderson*, 695 F.3d 390 (6th Cir. 2012). A panel of this Court affirmed, but the full Court granted Williams's petition for rehearing en banc.

## A.    Statement Of The Facts.

On April 2, 2006, Brian Williams was involved in a verbal altercation with his stepdaughter at their home in Cleveland, Ohio. After threatening to shoot his stepdaughter's mother (his wife), Williams walked outside, pulled out a gun, and fired a round into the air. He re-entered the home, put the gun on a table, and, in front of his eight children (ranging in age from 1 month to 17 years),

-3-

threatened to shoot his wife and kill his stepdaughter if she interfered. After pointing his gun at the other children and repeating his threat to kill anyone else who interfered, Williams walked outside, got into his car, and drove away. His stepdaughter called the police, who located the vehicle, arrested Williams, and recovered the firearm. PSR ¶¶ 6-7. During a post-arrest interview, Williams admitted to having problems with his stepdaughter and to firing his gun into the air, but denied making any threats or pointing his gun at anyone. PSR ¶ 8. Further investigation revealed that Williams was a convicted felon who could not possess firearms legally. See 18 U.S.C. § 922(g)(1); *Lewis* v. *United States*, 445 U.S. 55, 60-61 (1980) ("[T]he fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability.").

## B. Procedural History.

On March 10, 2006, a grand jury in the Northern District of Ohio indicted Williams for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Williams pleaded guilty to the charge.

1. Violations of Section 922(g)(1) expose the offender to a statutory sentencing range of zero to 10 years of imprisonment, see 18 U.S.C. § 924(a)(2), but if the offender's criminal history includes at least three convictions for a "violent felony" or a "serious drug offense," then the ACCA mandates a sentence of at least 15 years of imprisonment and permits a maximum sentence of life. See

-4-

*Custis* v. *United States*, 511 U.S. 485, 487 (1994). A "violent felony" is defined

as any crime punishable by imprisonment for more than one year that:

> (i)    has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, or
> otherwise involves conduct that presents a serious potential
> risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B)(i)-(ii). Clause (i) is known as the "elements" (or

"force") clause. Clause (ii)'s first half is known as the "enumerated crimes"

clause, and its second half is known as the "residual clause." See, *e.g.*, *United*

*States* v. *Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014).

2. The Probation Officer recommended that the court sentence Williams

as an armed career criminal because he had three prior "violent felony" convic-

tions: a 1999 Ohio conviction for attempted felony assault, a 1995 Ohio convic-

tion for domestic violence, and a 1997 Ohio conviction for assault on a peace

officer. PSR ¶¶ 33, 36, 38. The PSR did not specify the basis for the conclusion

that these convictions qualified as violent felonies. As an armed career criminal,

Williams faced an advisory guidelines range of 188 to 235 months' imprison-

ment. On November 9, 2006, the district court adopted the PSR's unobjected-

to recommendations and sentenced Williams as an armed career criminal to 180

months' imprisonment. Williams did not appeal, so the judgment became final

on November 20, 2006, when the then-applicable 10-day period for filing a notice of appeal (since amended to 14 days) expired. See *Sanchez-Castellano* v. *United States*, 358 F.3d 424, 427 (6th Cir. 2004).

3. Between 2007 and 2014, Williams filed (and attempted to file) a number of collateral attacks on the 2006 judgment, to no avail.

a. On November 14, 2007, Williams filed a *pro se* motion under Section 2255, alleging ineffective assistance of counsel, lack of jurisdiction in the trial court, and double jeopardy. R21: Motion, PageID 52-64. The district court denied the motion and declined to issue a certificate of appealability. R29: Order, PageID 185-187.

b. On September 23, 2010, Williams filed a second *pro se* motion under Section 2255, alleging that his ACCA-enhanced sentence was improper under *(Curtis) Johnson* v. *United States*, 559 U.S. 133 (2010), and *United States* v. *Booker*, 543 U.S. 220 (2005). R31: Motion, PageID 101-103. The district court determined that the motion was an unauthorized "second or successive" motion and transferred it to this Court to consider whether to grant authorization. R32: Order, PageID 195; see *In re Sims*, 111 F.3d 45 (6th Cir. 1997). This Court denied authorization. R33: Order, PageID 196.

c. On March 26, 2013, Williams filed a *pro se* application in this Court seeking authorization to file a successive Section 2255 motion to raise various

-6-

ineffective-assistance-of-counsel claims and a constitutional challenge to Section 922(g)(1). This Court denied authorization. R34: Order, PageID199.

d. On June 20, 2014, Williams filed a *pro se* motion under Section 2255, alleging "a misapplication of the ACCA designation to his sentencing status." R35: Motion, PageID 201 (citing *Descamps* v. *United States*, 570 U.S. 254 (2013)). The district court denied the motion. R.36: Order, PageID 205-206.

4. The current litigation began on March 4, 2016, when Williams filed a counseled motion under Section 2255, alleging that his prior convictions were no longer violent felonies in light of the then-recent decision in *(Samuel) Johnson* v. *United States*, 135 S. Ct. 2551 (2015), holding the ACCA's residual clause unconstitutionally vague. R39: Motion, PageID 210.[1] The district court treated the motion as an unauthorized successive Section 2255 motion and transferred it to this Court, R41: Order, PageID 240-241, which granted authorization in part. R43: Order, PageID 242-247. The Court rejected Williams's arguments regarding his convictions for domestic violence and assault on a peace officer, holding that they were unaffected by *Johnson* because they satisfied the ACCA's elements clause. *Id.* And, while it recognized that *Anderson* had held that Williams's remaining conviction (Ohio felony assault) also satisfied the ACCA's

---

[1] Unless otherwise noted, all subsequent references to "*Johnson*" are to the decision in *(Samuel) Johnson*.

-7-

elements clause, it granted authorization as to this offense, reasoning that "much

has changed in the four years since we decided *Anderson*." R43: Order, PageID

245 (citing *Descamps, supra*, and *Mathis* v. *United States*, 136 S. Ct. 2243 (2016)).

## C.    Ruling Under Review.

The district court addressed Williams's authorized motion and denied it.

It noted that Williams "may have the better argument" why Ohio felony assault

does not satisfy the elements clause, and thus is not an ACCA violent felony,

but held that "it remains bound by *Anderson* and that Williams'ss conviction for

attempted felony assault remains a 'violent felony' under the elements clause of

the ACCA." R49: Order, PageID 410.  The district court granted a certificate

of appealability, finding that "there is a basis upon which to issue" one.  *Id.*[2/]

## D.    Post-Ruling Proceedings.

Williams appealed, arguing that Ohio felony assault does not satisfy the

elements clause and that *Anderson* was wrongly decided.  A divided panel of this

Court rejected that argument and affirmed.  875 F.3d 803.  Judge Rogers's lead

opinion reasoned that "[n]one of Williams's arguments permits this panel to

overrule *Anderson*."  Judge Moore concurred, agreeing that *Anderson* was binding

---

[2/] The district court did not "indicate which specific issue or issues" merited a COA, see 28 U.S.C. § 2253(c)(3), but the issue-specificity requirement is "nonjurisdictional." *Gonzalez* v. *Thaler*, 565 U.S. 134, 143 (2012); see also *Keeling* v. *Warden*, 673 F.3d 452, 457 (6th Cir. 2012).

-8-

precedent but suggesting that *Anderson* was wrongly decided and should be re-considered. Judge Merritt dissented, expressing the view that *Mathis* had abrogated *Anderson*. Williams petitioned for rehearing en banc, urging the Court to reconsider *Anderson*, and the Court granted the petition.[3/]

## SUMMARY OF ARGUMENT

The en banc Court requested supplemental briefing on nine questions of federal postconviction practice and procedure, all of which relate to the following two issues: (1) whether Williams's successive Section 2255 motion should have been dismissed under 28 U.S.C. § 2244(b)(1), and (2) whether Williams met his burden of proving his sentence was based solely on the residual clause. The answer to both questions is "no."

I. Prior to 1996, federal courts were not required to entertain the merits of claims raised in a repetitive collateral attack by a state or a federal prisoner if it was "successive" (meaning it reasserted a claim previously adjudicated on the merits) or "abusive" (meaning it asserted a new claim) unless the defendant

---

[3/] On December 13, 2017, the same three-judge panel that decided this case issued an unpublished decision in *United States* v. *Burris*, No. 16-3855, holding, in light of *Anderson* and the decision in this case, that Ohio felony assault satisfied the elements clause in the federal Sentencing Guidelines. 2017 WL 6368852. On February 26, 2018, the same day the Court granted rehearing en banc in this case, the Court granted rehearing en banc in *Burris*, a direct appeal, to address *Anderson*'s elements-clause holding.

could show either cause and prejudice or actual innocence. See *McCleskey* v. *Zant*, 499 U.S. 467, 484-490 (1991); *Kuhlmann* v. *Wilson*, 477 U.S. 436, 454 (1986); *Sanders* v. *United States*, 373 U.S. 1, 15-17 (1963).

A. The Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (AEDPA), altered this landscape. The Act provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). The Act similarly mandates the dismissal of a "habeas corpus application under section 2254" raising a claim not presented in a prior application unless it involves either compelling new evidence of innocence or a new and previously-unavailable rule of constitutional law made retroactive by the Supreme Court. See 28 U.S.C. § 2244(b)(2). But while Section 2244(b)(1) and (2) codify a different approach than existed before the AEDPA to "successive" and "abusive" collateral attacks, these provisions are limited to claims in an "application for habeas corpus under *section 2254*," meaning they restrict successive and abusive filings by state – but not federal – prisoners.

B. The conclusion that Section 2244(b)(1) does not apply to federal prisoners answers one question but leaves unresolved a series of other questions concerning AEDPA's restrictions on repetitive filings by federal prisoners. 28 U.S.C. § 2255(h) provides that "[a] second or successive motion" by a federal

-10-

prisoner "must be certified as provided in section 2244" to contain either com-pelling new evidence of innocence or new, retroactively-applicable rules of con-stitutional law. See 28 U.S.C. § 2255(h)(1)-(2). Section 2255(h) is susceptible to two permissible readings. The first begins with the presumption that Congress intended that federal prisoners be subject to restrictions similar to those govern-ing state prisoners, while the second presumes that Congress created a distinct legal regime for federal prisoners. Under the first reading, Section 2255(h) would regulate abusive Section 2255 motions and pre-AEDPA law would regu-late successive motions; under the second reading, Section 2255(h) would codify a single unitary standard for all repetitive motions by federal prisoners regardless of whether they would qualify as successive or abusive. The Court need not choose between these two interpretations, however, because the result is the same under either reading: Williams is not entitled to relief.

II. The Court's remaining questions focus on whether and how a defend-ant who asserts that his sentence was based on the ACCA's residual clause can prove his entitlement to successive Section 2255 relief.

A. A "second or successive" Section 2255 motion may not be filed with-out obtaining prefiling authorization from the court of appeals, see 28 U.S.C. 2244(b)(3)(C), which may be granted upon a prima facie showing that the pro-posed motion contains "a new rule of constitutional law, made retroactive to

-11-

cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Authorization, when granted, vests the district court with jurisdiction that it would otherwise lack to entertain the successive motion. Once that motion is filed, the district court must determine for itself whether the claim that was authorized for filing in fact meets the statutory standard (here, the standard in Section 2255(h)(2)). See 28 U.S.C. § 2244(b)(4). If it does not, then the court must dismiss the motion; if it does, then the court addresses the merits of the motion along with any applicable defenses.

**B.** In this case, the district court did not perform the Section 2244(b)(4) analysis but instead denied relief on the merits. Williams, however, did not meet his burden under Section 2244(b)(4): although he nominally asserted that his claim was based on *Johnson*, his real argument, in his own words, is that "*Anderson* no longer remains good law in light of * * * [*Mathis* and *Descamps*]." Supp. Br. 2. But *Descamps* and *Mathis* were decisions interpreting the ACCA, not the Constitution; and, while arguments based on rules of statutory interpretation can be litigated on direct appeal and in an initial collateral attack under Section 2255, they are not cognizable in a successive Section 2255 motion, which is restricted to claims based on a new rule of "constitutional" law. See *Paulino* v. *United States*, 352 F.3d 1056, 1059 n.2 (6th Cir. 2003) ("28 U.S.C. § 2255[(h)(2)]

-12-

does not permit a defendant to base a second or successive motion on non-constitutional errors."). Because neither *Descamps* nor *Mathis* can support a successive Section 2255 motion, see *Potter* v. *United States*, 887 F.3d 785, 788 (6th Cir. 2018); *In re Conzelmann*, 872 F.3d 375, 376-377 (6th Cir. 2017), the procedural posture of this case prevents this Court from entertaining Williams's arguments that *Anderson* is no longer good law after *Descamps* and *Mathis*.

C. In any event, as this Court recently held in *Potter* a defendant seeking successive Section 2255 relief based on *Johnson* bears the burden of proving, by a preponderance of the evidence, that his sentence was in fact based on the now-invalid residual clause. Williams did not meet that burden.

1. To prove a *Johnson* claim, the defendant may rely on either the sentencing record in his case, or judicial decisions in effect at the time he was sentenced, either or both of which may show that it is more likely than not that his sentence was based on the residual clause. Judicial decisions issued after the defendant's sentencing that address the status of predicate convictions under the ACCA's different definitional clauses do not give rise to a presumption that the sentencing court did or did not rely on a particular clause, though there may be circumstances where such decisions are relevant to the analysis.

-13-

Case: 17-3211    Document: 43    Filed: 05/08/2018    Page: 30

2. A defendant who cannot meet his burden of proof that the sentencing court relied solely on the residual is not entitled to relief, and his successive Section 2255 motion should be denied. But a defendant who can make that showing is automatically entitled to relief: to the contrary, a court need not grant relief if the sentencing court's reliance on the residual clause is harmless.

## ARGUMENT

### I.    Section 2244(b)(1) Does Not Bar Williams's Current Section 2255 Motion Because That Provision Is Limited To State Prisoners.

Section 2244(b)(1) provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." The Court has asked whether Section 2244(b)(1) applies to federal prisoners. The answer to that question turns, first and foremost, on the statutory text, yet this statute was not enacted in a vacuum. To the contrary, it was adopted in 1996 against a patchwork of related statutes and judicial decisions dating back to the Founding that sought to balance the interest in continued relitigation against the need for finality. An understanding of that backdrop informs the meaning of the text.

### A.    Background.

The right to file a petition for a writ of habeas corpus is a right bestowed by statute. See *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 94 (1807) ("[T]he power

to award the writ by any of the courts of the United States must be given by written law."). Although the Constitution addresses the circumstances under which the writ of habeas corpus may be "suspended," U.S. CONST. art. I, § 9, cl. 2, neither this provision nor any other addresses "the content or existence" of the writ. See *Noriega* v. *Pastrana*, 559 U.S. 917, 1006 (2010) (Thomas, J., dissenting from the denial of certiorari). As such, those matters are entrusted to Congress. See *Felker* v. *Turpin*, 518 U.S. 651, 663 (1996) ("[J]udgments about the proper scope of the writ are normally for Congress to make.").

1. *Early Practice.* In the Judiciary Act of 1789, ch. 20, § 14, 1 Stat. 81-82, the first Congress enacted the direct ancestor to the statute codified today at 28 U.S.C. § 2241, which empowered federal courts to issue writs of habeas corpus to prisoners "in custody, under or by colour of the authority of the United States." Consistent with the writ's English common law roots, which informed its scope, see *Bollman*, 8 U.S. (4 Cranch) at 94, the writ could be used to challenge pretrial executive detention, see *INS* v. *St. Cyr*, 533 U.S. 289, 301 (2001), or argue that the judgment in a criminal case was void because the trial court lacked jurisdiction, see *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 203 (1830).

These common-law limits on the writ were subject to an array of competing forces during the 19th century, both statutory and judicial. Shortly after the Civil War, Congress extended to persons in state custody the right to seek habeas

-15-

corpus relief. Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385. Congress repealed that authority the next year, 15 Stat. 44, only to reestablish it in 1885 in the predecessor to 28 U.S.C. § 2254. 23 Stat. 457; see *Lindh* v. *Murphy*, 96 F.3d 856, 868 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997). The Supreme Court likewise struggled with these limitations. Prior to 1891, the Court could only review criminal cases arising on habeas review as it did not have direct appellate jurisdiction; and, under *Watkins*, it could only grant relief in cases involving jurisdictional error. Frustrated by these limitations, which precluded it from remedying obvious constitutional violations, the Court embraced what it would later term the legal "fiction" that a trial marred by constitutional error was equivalent to a trial conducted by a court without jurisdiction. See *United States* v. *Cotton*, 535 U.S. 625, 630 (2002); *McCleskey*, 499 U.S. at 478; *Wainwright* v. *Sykes*, 433 U.S. 72, 79 (1977). In this way, the Court simultaneously expanded both the writ's scope and its own authority to redress constitutional violations.

2. *The Problems With Section 2241*. The Court's broad approach had unintended consequences. An application for a writ of habeas corpus seeks a form of relief directed to the petitioner's custodian – literally, production of the body – and must therefore be filed in the district of the petitioner's confinement. See *Rumsfeld* v. *Padilla*, 542 U.S. 426, 447 (2004). This statutory venue requirement

-16-

posed significant administrative problems, however, because the district of confinement was often located far from the scene of the trial and had no connection to the case or access to the files. See *United States* v. *Hayman*, 342 U.S. 205, 228-229 (1952); *In re Hanserd*, 123 F.3d 922, 925 (6th Cir. 1997). And those federal district courts that were situated in districts that housed penal institutions were disproportionately burdened by these petitions. *Hayman*, 342 U.S. at 268-269. The adjudicatory burdens posed by these petitions were exacerbated further by the common law rule that "*res judicata* does not apply to a decision on habeas corpus." *Waley* v. *Johnston*, 316 U.S. 101, 105 (1942); see William S. Church, *A Treatise On The Writ of Habeas Corpus* § 386, p. 570 (2d ed. 1893) (repetitive applications must be resolved "independently, and not * * * be influenced by the previous decisions refusing discharge"). Thus, an unsuccessful applicant could "file another, sometimes many" such applications. *Sanders*, 373 U.S. at 8.

The inapplicability of *res judicata* made sense at the time: orders denying habeas corpus relief were not appealable, so a repetitive application served as a *de facto* appeal. See *McCleskey*, 499 U.S. at 479. Once appellate review became available, the Supreme Court revised the common law approach, holding that district courts, when considering applications asserting claims previously rejected on the merits in a prior application (so-called "successive" applications), could accord some weight to the earlier denial. See *Salinger* v. *Loisel*, 265 U.S.

-17-

224, 230-231 (1924). The Court likewise gave district courts discretion to refuse to entertain an application raising a new claim (so-called "abusive" applications), at least when the new claim was deliberately withheld from the prior filing. See *Wong Doo* v. *United States*, 265 U.S. 239, 240-241 (1924).

3. *The 1948 Legislation.* In 1948, Congress addressed both the venue problems associated with the use of Section 2241 and the problem of repetitive filings.

a. Congress responded to the venue problems with Section 2241 by enacting 28 U.S.C. § 2255, which created a substitute postconviction "motion" remedy for federal prisoners designed to "alleviate the burden of habeas corpus petitions filed by federal prisoners in the district of confinement." *United States* v. *Addonizio*, 442 U.S. 178, 185 (1979). This new statutory motion procedure diverted federal prisoner collateral attacks away from the district of confinement and channeled them to "the more convenient jurisdiction of the sentencing court," *Hayman*, 342 U.S. at 219, while still "afford[ing] federal prisoners a remedy identical in scope to federal habeas corpus." *Davis* v. *United States*, 417 U.S. 333, 343 (1974). Section 2255 was the "exclusive" means, *In re Lipscomb*, 408 F.2d 1003, 1004 (6th Cir. 1969), by which federal prisoners could collaterally attack a final judgment: it was intended to be used "in lieu of habeas corpus" under Section 2241, see *Stone* v. *Powell*, 428 U.S. 465, 479 (1976), unless Section

-18-

2255 was shown to be "inadequate or ineffective to test the legality of * * * detention," 28 U.S.C. § 2255(e), in which case habeas relief could be sought under Section 2241. See *Bannerman* v. *Snyder*, 325 F.3d 722, 724 (6th Cir. 2003).

b. Congress addressed the problem of repetitive filings by enacting 28 U.S.C. § 2244, which stated that federal courts need not entertain a Section 2255 motion if it "presents no new ground not theretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry." In 1963, the Supreme Court held that this provision went beyond *Salinger* by allowing district courts to afford "[c]ontrolling weight" to the denial of a prior Section 2255 motion if the "same ground presented in the subsequent application was determined adversely to the applicant on the prior application," and "the prior determination was on the merits." *Sanders*, 373 U.S. at 16. The Court made clear, however, that even if these criteria were met, courts could still address the merits of an otherwise-successive motion if, as the statute provided, the "ends of justice" so required. *Id.*

Three years after *Sanders*, Congress amended Section 2244 to "introduc[e] a greater degree of finality of judgments in habeas corpus proceedings." S. Rep. No. 1797, 89th Cong., 2d Sess. 2, 1966 U.S.C.C.A.N. 3663, 3664 (1966). Like the 1963 legislation before it that addressed the issue of successive filings, the 1966 legislation was directed to the parallel problem of abusive filings. Congress

-19-

reclassified the existing Section 2244 into a new subsection (a), and added a new subsection (b), which stated that federal courts "need not" entertain "subsequent applications" for collateral relief "unless the application alleges and is predicated on a factual or other ground not adjudicated on" the prior application "and unless the court * * * is satisfied that the applicant has not on the earlier application * * * abused the writ." 28 U.S.C. § 2244(b) (1966). In *Kuhlmann* v. *Wilson*, Court held that, although the 1966 legislation did not contain an "ends of justice" exception for abusive applications, that inquiry remained applicable. 477 U.S. at 445.451. And, drawing on more recent precedents restricting federal collateral review of procedurally defaulted claims, *e.g.*, *Wainwright*, 433 U.S. at 87-88, the Court held that the "ends of justice" permitted federal courts to entertain successive or abusive applications only if the defendant could show cause and prejudice or actual innocence. See *Kuhlmann*, 477 U.S. at 454-455; see also *McCleskey*, 499 U.S. at 490-494.

The "net result" of the patchwork of "congressional and judicial action" regarding repetitive applications was the creation of a "qualified application of the doctrine of *res judicata.*" *McCleskey*, 499 U.S. at 486.

4. *The AEDPA.* In 1996, Congress enacted the AEDPA, the overriding purpose of which was to "advance the finality of criminal convictions" for state and federal prisoners. See *Mayle* v. *Felix*, 545 U.S. 644, 662 (2005); see also

-20-

*United States* v. *Frady*, 456 U.S. 152, 166 (1982) ("[T]he Federal Government, no less than the States, has an interest in the finality of its criminal judgments."). To that end, Congress "codifie[d] some of the pre-existing limits on successive petitions" and "further restrict[ed] the availability of relief." *Felker*, 518 U.S. at 664. As relevant here, the statute replaced Section 2244 with a new Section 2244, titled "Finality of determination," that "greatly restricts the power of federal courts" to entertain "second or successive" collateral attacks by state and federal prisoners. *Tyler* v. *Cain*, 533 U.S. 656, 661 (2001). The restrictions are codified in 28 U.S.C. § 2244(b)(1)-(4).

a. Subsection (b)(1) states that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application" – that is, a pre-AEDPA "successive" application – "shall be dismissed," and provides no exceptions. Subsection (b)(2) states that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application" – that is, a pre-AEDPA "abusive" application – "shall be dismissed" unless the claim satisfies one of two narrow exceptions for compelling new evidence of innocence or certain new rules of constitutional law. See 28 U.S.C. § 2244(b)(2)(A)-(B). Subsections (3) and (4), in turn, set out a list of procedures – so-called "gatekeeping" requirements – that govern "second or successive" collateral attacks. Subsection (3)

-21-

states that a defendant who wants to file a "second or successive" collateral attack must obtain prefiling authorization (or certification), identifies who shall decide that question ("a panel of the court of appeals"), what must be decided (whether the petitioner has made "a prima facie showing" that his application "satisfies the requirements of this subsection"), and when the decision must be made (within 30 days after filing). See 28 U.S.C. § 2244(b)(3)(A)-(D).   And it concludes by stating that an order granting or denying authorization may not be "the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E).[4/]   Lastly, subsection (4) instructs district courts to "dismiss" any claim in an authorized successive motion "unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4).

b.  Congress separately added a new provision to Section 2255, providing that "[a] second or successive motion [to vacate sentence] must be certified as provided in section 2244" to contain compelling new evidence of innocence or new, previously-unavailable rules of constitutional law made retroactive to cases on collateral review by the Supreme Court.  See 28 U.S.C. § 2255(h).

---

[4/] Section 2244(b)(3)(E), by its terms, deprives a litigant of the prerogative to file a "petition for rehearing" of an order granting or denying authorization. It does not bar the courts of appeals from granting rehearing *sua sponte*. See *In re Byrd*, 269 F.3d 585, 588-589 (6th Cir. 2001) (opinion of Jones, J.) (holding that Section 2244(b)(3)(E) bars petitions for panel and en banc rehearing, and agreeing with decisions of other circuits that the statute does not preclude *sua sponte* review by the court).

-22-

**B.     Analysis.**

Section 2244(b)(1) does not apply to federal defendants.  And, regardless of whether Section 2255(h) is interpreted to create a legal regime for federal prisoners that parallels the regime governing state prisoners or a distinct legal regime for federal defendants, the result would be the same:  Williams is not entitled to Section 2255 relief from his sentence.

**1.     Section 2244(b)(1) Does Not Apply To Federal Prisoners.**

a. Section 2244(b)(1) mandates the dismissal of claims asserted in a repetitive "habeas corpus application under section 2254."  Although a Section 2255 "motion" could arguably qualify as a "habeas corpus application," a Section 2255 motion cannot possibly qualify as a "habeas corpus application *under section 2254*."  28 U.S.C. § 2244(b)(1) (emphasis added).  Section 2254, by its terms, provides a statutory remedy for persons "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(b)(1), and has no applicability to federal prisoners, who are "in custody under sentence of a court established by Act of Congress," 28 U.S.C. § 2255(a), and who seek collateral relief by way of Section 2255.  See *Velasquez* v. *United States*, 4 F. Supp. 2d 331, 333 n.2 (S.D.N.Y. 1998) ("Section 2254 provides for remedies in federal court for state prisoners, while

-23-

Section 2255 provides for remedies in federal court for federal prisoners."). Congress thus limited Section 2244(b)(1) to successive applications by state prisoners, and did not extend its reach to federal prisoners.

Other provisions of the statute confirm this conclusion. See *Samantar* v. *Yousef*, 560 U.S. 305, 319 (2010) ("[W]e read statutes as a whole."). Some subsections of Section 2244 contain state-prisoner-specific language mirroring the language of Section 2244(b)(1). See 28 U.S.C. § 2244(b)(2) ("habeas corpus application under section 2254"); see also 28 U.S.C. § 2244(c) ("habeas corpus proceeding [by] a person in custody pursuant to the judgment of a state court"), (d)(1) (same). But other provisions use federal-prisoner-specific language, see 28 U.S.C. § 2244(a) (referring to "the detention of a person pursuant to a judgment of a court of the United States"). And still other provisions do not use any qualifying language at all, implying they are applicable to state and federal prisoners alike. See 28 U.S.C. § 2244(b)(3)(A) ("second or successive application"). These surrounding provisions reveal that the reference in Section 2244(b)(1) to a "habeas corpus application under section 2254" cannot be dismissed as inadvertent and must instead be considered a conscious restriction to state prisoners. See *Russello* v. *United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of

-24-

the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). And, while there is no readily-apparent reason why Congress would have wanted to exclude federal prisoners from the reach of Section 2244(b)(1), adherence to the text, as written, does not produce a result "so bizarre" that the Court can decline to enforce the statute as written because "Congress could not have intended" this outcome. *Central Bank* v. *First Interstate Bank*, 511 U.S. 164, 188 (1994).

b. Some courts of appeals, including this Court in *Charles* v. *Chandler*, 180 F.3d 753 (1999) (per curiam), have applied Section 2244(b)(1) to successive Section 2255 motions, reasoning that (i) the statutory cross-reference to "section 2244" in Section 2255(h) incorporates Section 2244(b)(1) into Section 2255, or (ii) Congress would not have wanted to treat federal prisoners differently from their state counterparts. Neither rationale is persuasive.

(i.) Section 2255(h) states that second or successive Section 2255 motions must be authorized "as provided in section 2244." But, contrary to *Bennett* v. *United States,* 119 F.3d 470, 471 (7th Cir. 1997), this cross-reference does not incorporate Section 2244(b)(1) into Section 2255. Rather, the cross-reference is most naturally read to incorporate into Section 2255 those provisions of Section 2244 that can otherwise apply of their own force to federal defendants – such as the neutrally-worded gatekeeping provisions in Section 2244(b)(3) and (4) – and

-25-

not provisions that are otherwise specific to state prisoners, like Section 2244(b)(1). Had Congress intended to make any of the state-specific provisions applicable to federal defendants, it could have written those provisions using neutral language (as it did elsewhere in Section 2244), or it could have used a "notwithstanding any other provision of law"-type clause, which would have overridden those state-specific limitations, see generally *Shomberg* v. *United States*, 348 U.S. 540, 547 (1955) (explaining that a "notwithstanding" clause overrides contrary language). But it did neither, and the most natural reading of the statute, as Congress chose to write it, indicates that it did not intend to incorporate Section 2244(b)(1).[5/]

(ii.) Some courts have applied Section 2244(b)(1) to federal prisoners by suggesting that it would have been "odd" for Congress to have "allow[ed] federal prisoners to refile precisely the same non-meritorious motions over and over again while denying that right to state prisoners." *In re Baptiste*, 828 F.3d 1337, 1339 (11th Cir. 2016) (citing cases). But policy-driven considerations such as these cannot be used to override unambiguous statutory text. See *Mohamad* v.

---

[5/] Nor can it be said that Section 2244(a) makes Section 2244(b)(1) applicable to federal defendants. Section 2244(a) reiterates that Section 2255 defines the collateral remedies available to federal prisoners, one of which is that a federal prisoner may file an "application for a writ of habeas corpus" if Section 2255 is inadequate or ineffective. 28 U.S.C. § 2255(e). But a federal prisoner's habeas corpus application would be filed under Section 2241, not, as Section 2244(b)(1) states, "under section 2254."

*Palestinian Auth.*, 566 U.S. 449, 460 (2012) (holding that a litigant's "purposive argument simply cannot overcome the force of the plain text"); see also *Marx* v. *General Revenue Corp.*, 568 U.S. 371, 387 n.9 (2013) (same).

c. In *Charles*, this Court held that a federal prisoner's repetitive claim was subject to dismissal under Section 2244(b)(1), and that, even if that provision did not apply, he would not have been entitled to authorization to file a successive Section 2255 motion. 180 F.3d at 758-759. In applying Section 2244(b)(1) to a federal prisoner, the Court did not discuss or analyze the statutory text, which, for the reasons given above, is unambiguously limited to state prisoners. This portion of *Charles* should therefore be overruled.[6]

---

[6] The Court has also asked whether *Charles* can be reconciled with *In re Watkins*, 810 F.3d 375 (6th Cir. 2015). It can. *Watkins* granted authorization to file a successive Section 2255 motion based on *Johnson* without addressing Section 2244(b)(1) or *Charles*. Because Section 2244(b)(1) does not apply (and because neither the statute nor *Charles* was raised by the government in *Watkins*), *Watkins* was correct to grant authorization without regard for them. And, while the March 9 briefing order describes Section 2244(b)(1) as a "jurisdictional bar," implying that the Court would be required to raise it *sua sponte*, nothing in the text of Section 2244(b)(1) speaks to the statutory or constitutional power of an Article III court to adjudicate an otherwise-successive application, which is the touchstone of a jurisdictional rule. See *Henderson ex rel. Henderson* v. *Shinseki*, 562 U.S. 428, 438-439 (2011). Rather, Section 2244(b)(1) is better understood as a mandatory claim-processing rule: it specifies a consequence – dismissal – when certain preconditions are found to exist.

### 2.     Regardless Of How Section 2255(h) Is Interpreted, Williams Is Not Entitled To Successive Section 2255 Relief.

The conclusion that Section 2244(b)(1) does not apply to federal prisoners answers the specific question posed by the Court while simultaneously raising broader questions about how Section 2255(h) operates. Yet the answers to those questions are not at all clear from the statute's text; in fact, the statutory text and structure are susceptible to two plausible interpretations.

Section 2255(h) regulates "second or successive" motions, but this phrase "is not self-defining," and takes its "full meaning" from case law, including pre-AEDPA cases involving successive and abusive applications. See *Panetti* v. *Quarterman*, 551 U.S. 930, 943-944 (2007). Given the breadth of the term "second or successive," there are, in our view, two possible ways to construe Section 2255(h). The first would presume that Congress intended for Section 2255(h) to operate in a manner parallel to its state-prisoner counterpart, Section 2244(b), while the second would presume that Congress intended for Section 2255(h) to create a distinct legal regime for federal prisoners that departs from the approach governing state prisoners. Both of these interpretations are plausible, yet each has its shortcomings. See *id.* (noting that the provision of the AEDPA at issue was subject to two "reasonable interpretation[s]"); cf. *Lindh* v. *Murphy*, 521 U.S. 320, 336 (1997) ("[I]n a world of silk purses and pigs' ears, the

-28-

[AEDPA] is not a silk purse of the art of statutory drafting."). We discuss both interpretations, but the Court need not definitively choose between them because the result here would be the same under either approach.

a. *The Parallel Interpretation.* Section 2255(h) can fairly be read to create a legal regime governing repetitive motions by federal prisoners that parallels the regime governing repetitive applications by state prisoners.

(i.) Textual and structural similarities between the pertinent statutes support this conclusion. As noted, Section 2244(b) retains the pre-AEDPA distinction between "successive" and "abusive" applications (that is, old and new claims) for state prisoners, compare 28 U.S.C. § 2244(b)(1) with 28 U.S.C. § 2244(b)(2), and permits authorization to be granted only in abusive cases involving new claims, and only then if one of two narrow sets of criteria is satisfied. Section 2255(h) has the same textual and structural features as Section 2244(b)(2): it contains (with minor differences) the same two exceptions as the ones set forth in Section 2244(b)(2)(A)-(B), both of which are contingent on a "new" event – either "newly" discovered evidence of innocence, see 28 U.S.C. § 2255(h)(1), or a "new" and retroactively-applicable rule of constitutional law, see 28 U.S.C. § 2255(h)(2). The requirement of a "new" event, and the similarities to Section 2244(b)(2), permit Section 2255(h) to be read as codifying the circumstances under which repetitive federal prisoner applications that

would have qualified as "abusive" under pre-AEDPA law may be authorized for filing.  Cf. *Nijhawan* v. *Holder*, 557 U.S. 29, 39 (2009) ("Where, as here, Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations."); *Burlison* v. *United States*, 533 F.3d 419, 435 (6th Cir. 2008) (favoring an interpretation that is "most consistent with the structure of [the statute] as a whole").  While this construction of Section 2255(h), read together with the inapplicability of Section 2244(b)(1) to federal defendants, would mean that Section 2255(h) does not regulate the filing of "successive" Section 2255 motions reasserting old claims, that would not mean there are *no* limits on such filings.  Rather, the statute's silence on this point can be understood as an intent to retain established pre-AEDPA principles governing such motions.

Congress may – and, in several places in the AEDPA, did – replace the body of judge-made rules restricting collateral review with statutory rules that were more stringent than those that existed under prior law.  See *Williams* v. *Taylor*, 529 U.S. 420, 433-434 (2000) (28 U.S.C. § 2254(e)(2) adopted "more stringent requirements" than existed pre-AEDPA for granting an evidentiary hearing); see also *Woodford* v. *Garceau*, 538 U.S. 202, 213 (2002) (O'Connor, J., concurring) (pre-AEDPA version of 28 U.S.C. § 2254(d) was "less restrictive" than the version as amended by AEDPA).  But AEDPA's enactment, in and of

-30-

itself, did not preempt or override every pre-AEDPA judge-made doctrine. In fact, just the opposite is true: Congress enacted AEDPA against a backdrop of numerous judge-made doctrines of which it is presumed to have been aware, see *Abuelhawa* v. *United States*, 556 U.S. 816, 821 (2009), and, while it displaced some of those doctrines, it did not displace all of them. For example, the procedural default doctrine is a judge-made doctrine devised long before AEDPA was enacted, see, *e.g.*, *Wainwright*, 433 U.S. at 77-79, and although AEDPA makes no mention of it, courts have rejected defendants' arguments that AEDPA, by its silence, "somehow abolished procedural default." *Truesdale* v. *Moore*, 142 F.3d 749, 752 n.2 (4th Cir. 1998); *Moleterno* v. *Nelson*, 114 F.3d 629, 634 (7th Cir. 1997) (AEDPA "made no change" to procedural default); see also *Wilson* v. *Sellers*, 138 S. Ct. 1188, 1202 (2018) (Gorsuch, J., dissenting) ("'AEDPA did not change the application of pre-AEDPA procedural default principles.'") (quoting Brian R. Means, *Federal Habeas Manual* § 9B:3 (2017)). By the same logic, Section 2255(h) can read to have retained pre-AEDPA case law, like *Sanders*, that limited successive Section 2255 motions.[1]

---

[1] *Sanders* was developed to vest district courts with discretion to summarily dismiss a successive Section 2255 motion. While that discretion would continue to exist under the post-AEDPA gatekeeping regime, the courts of appeals, operating after AEDPA, would retain similar discretion to decline to grant leave to file successive motions in such cases as well. Cf. *Baptiste*, 828 F.3d at 1339-1340 (explaining that Section 2244(b)(1) applies to rehashed claims adjudicated

-31-

Williams, for his part, appears to endorse this reading of the statute. Like the government, he argues that Section 2244(b)(1) does not apply to federal defendants, but he contends that "well-evolved principles of 'sound judicial discretion' sufficiently authorize" courts to dismiss successive Section 2255 motions. See Supp. Br. 22 n.6 (citing *Sanders*, 373 U.S. at 16). And he concludes by arguing that those pre-AEDPA principles do not apply here because his current claim is "new" (and hence would be deemed "abusive" and thus governed by Section 2255(h)(2) but not "successive" for purposes of *Sanders*) such that he was entitled to apply for authorization to file his current motion under Section 2255(h)(2). *Id.*

(ii.)  The parallel interpretation of Section 2255(h) requires dismissal of Williams's current motion. The claim Williams asserts – that he is not an armed career criminal under *Johnson* – is not new:  Williams raised this claim in his 2010 and 2014 motions. Those motions cited different cases (*(Curtis) Johnson* and *Descamps*), but the claim itself ("I am not an armed career criminal") is a challenge to the same "step in the case." *Brannigan* v. *United States*, 249 F.3d 584, 588 (7th Cir. 2001) (defining "claim" this way); see *Babbitt* v. *Woodford*, 177 F.3d 744, 746 (9th Cir. 1999) (noting the irrelevance of "whether the basic claim is

on the merits in connection with a prior application for leave to file a successive collateral attack); *Bennett*, 119 F.3d at 470-471 (same).

-32-

supported by new and different legal arguments"). And, just as new facts offered in support of an old claim do not create a new claim, see *In re Bowling*, 422 F.3d 434, 439-440 (6th Cir. 2005), new legal theories offered in support of a challenge to the same step of the case do not create a new claim either. Thus, if a defendant "invokes the fourth amendment to protest the introduction of one item of evidence, a later contest to the same evidence based on the fifth or sixth amendment is just another iteration of the same claim." *Brannigan*, 249 F.3d at 588; see *Sanders*, 373 U.S. at 16 ("[A] claim of involuntary confession predicated on alleged psychological coercion does not raise a different 'ground' than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments."); *Williams* v. *United States*, 731 F.2d 138, 141-142 (2d Cir. 1984) (similar).

And Williams's 2010 and 2014 motions raising this claim were "adjudicate[d] on the merits." *Sanders*, 373 U.S. at 16. In this context, the phrase "on the merits" includes dispositions concluding that the underlying claims are insufficient to justify relief as well as dispositions that result in a dismissal with prejudice because of a "permanent and incurable" bar. See *Villaneuva* v. *United States*, 346 F.3d 55, 61 (2d Cir. 2003). Dispositions that conclude in a dismissal without prejudice for technical, curable grounds, such as failing to pay a filing

-33-

fee, see *Bennett*, 119 F.3d at 471, would not have been "on the merits." Williams's 2010 district court motion was jurisdictionally (and incurably) deficient because he had not sought prefiling authorization, which was later denied; and his 2014 district court application was denied because Williams "ha[d] not presented the Court with a valid basis on which to advance a second [or] successive petition pursuant to Section 2255." R36: Order, PageID 206.

Because Williams's current motion is successive, the Court would not be required to entertain its merits unless Williams could show either cause and prejudice or actual innocence. He can show neither. "Cause" exists where a claim is so novel that "its legal basis is not reasonably available to counsel," *Reed* v. *Ross*, 468 U.S. 1, 16 (1984), but the legal basis for Williams's *Johnson* claim was "plainly available." *Dugger* v. *Adams*, 489 U.S. 401, 409 (1989). *Johnson* rests on the principle that vague laws – including laws fixing punishment for a crime, see *United States* v. *Batchelder*, 442 U.S. 114 (1979) – "violate[] the first essential of due process." *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 (1926); see also *United States* v. *Levy*, 904 F.2d 1026, 1032-1034 (6th Cir. 1990) (rejecting vagueness challenge to federal sentencing statute). In light of this established principle, and the cases expounding on it, it cannot be said that Williams "lacked the tools to construct" (*Engle* v. *Isaac*, 456 U.S. 107, 133 (1982)) the claim, later adopted in *Johnson*, that the ACCA's residual clause was vague. The conclusion

-34-

that this claim was available is bolstered by the fact neither the Supreme Court nor this Court had ever addressed this argument as of November 2006, at the time Williams was sentenced. And, while the fact that *Johnson* was decided after Williams completed his prior motions may bear on Williams's likelihood of success on the merits of his claim, it does not alter the conclusion that the claim was available. See *Smith* v. *Murray*, 477 U.S. 527, 537 (1986) (relevant inquiry is "not on whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all").[8/]

Nor can Williams show that he is "actually innocent" of his ACCA sentence. As its name implies, the actual innocence exception was intended to permit review of otherwise-barred claims where the defendant could show that he was factually innocent of the offense of conviction. See *Murray* v. *Carrier*, 477 U.S. 478, 496 (1986). While the Court later extended this exception to include legal ineligibility for an aggravating factor necessary to support a capital sentence, see *Sawyer* v. *Whitley*, 505 U.S. 333, 345-347 (1992),[9/] neither the Supreme

---

[8/] The conclusion that a *Johnson* claim was available to Williams is not inconsistent with case law accepting that *Johnson* was "previously unavailable" within the meaning of Section 2255(h)(2): the statute focuses on whether the "rule" was previously unavailable, which it is until the Supreme Court announces it. But the question here is whether the claim (advocating the adoption of that rule) was available to a litigant. And it was because all the tools necessary to construct that claim existed at the time.

Court nor this Court have decided whether this exception extends to non-capital sentences. See *Dretke* v. *Haley*, 541 U.S. 386, 388-389 (2004) (reserving issue); *Gibbs* v. *United States*, 655 F.3d 473, 477-478 (6th Cir. 2011) (same). Here, as in *Gibbs*, the Court need not decide this issue because, on the record as it stands, Williams's sentence is not erroneous, and thus he is not "innocent" of anything.

b. *The Distinct Regime Interpretation*. The foregoing interpretation of Section 2255(h) presumes that, even though Congress did not treat state and federal prisoners identically, Congress intended for parallel limitations to govern both sets of defendants. But Section 2255(h) can also be interpreted to create a distinct legal regime for federal prisoners that departs entirely from the pre-AEDPA regime as well as the post-AEDPA regime for state prisoners. Under this reading, Section 2255(h) permits a federal prisoner to seek leave to file a second or successive Section 2255 motion without regard to whether it would qualify as "successive" or "abusive" under prior law so long as it satisfies one of the two sets of criteria in Section 2255(h)(1) or (2). Although this interpretation finds some support in the fact that Section 2255(h), unlike Section 2244(b), does not

---

[2] *Sawyer*'s holding can perhaps be understood today, in light of cases like *Ring* v. *Arizona*, 536 U.S. 584, 609 (2002), as holding that ineligibility for an aggravating factor supporting the death penalty is innocence, not of a capital sentence, but of an offense – namely, the aggravated offense of capital murder. See *Sattazahn* v. *Pennsylvania*, 537 U.S. 101, 111 (2003) (plurality opinion).

-36-

distinguish between new and old claims, it would mean that federal defendants have more latitude to reassert recycled challenges to final judgments than their state counterparts. Cf. *Baptiste*, 828 F.3d at 1339.

This reading of the statute would warrant the dismissal of Williams's motion. The Court granted Williams's application for leave to file a successive Section 2255 motion based on *Johnson*, which was permissible (even though he previously raised the same claim earlier) because the statute does not distinguish between successive and abusive filings. But the motion, once filed, was subject to a second-tier gatekeeping review by the district court to determine, not merely whether Williams made a prima facie showing that his claim was based on *Johnson*'s new constitutional rule, but rather, whether his claim was in fact based on that rule. As discussed *infra*, Williams did not make that showing because his claim was based, not on *Johnson*'s new constitutional rule, but rather on the non-constitutional rules in *Descamps* and *Mathis*.[10/]

---

[10/] Although *Descamps* and *Mathis* cannot support a successive Section 2255 motion, it is an open question whether, if those decisions led to a decision overturning *Anderson*, the remedy under Section 2255 would be "inadequate or ineffective," thereby permitting recourse to the Section 2241 habeas remedy. See 28 U.S.C. § 2255(e). This Court has held that certain fundamental errors emanating from intervening decisions of statutory construction can render Section 2255 inadequate or ineffective. See, *e.g.*, *Hill* v. *Masters*, 836 F.3d 591, 594-595 (6th Cir. 2016); *Wooten* v. *Cauley*, 677 F.3d 303, 307 (6th Cir. 2012); *Martin* v. *Perez*, 391 F.3d 799, 802-803 (6th Cir. 2004). But because Williams has not

## II.    Williams Did Not Meet His Burden Of Proving His Entitlement To Successive Section 2255 Relief.

The preceding discussion explained that Section 2244(b)(1) does not apply to federal defendants, and that, regardless of how Section 2255(h) is interpreted, Williams's claim fails.  To be sure, the government did not raise these procedural impediments below or before the panel, and because they are not jurisdictional, the Court is not required to address them, though it has discretion to do so.  Cf. *Elzy* v. *United States*, 205 F.3d 882, 886 (6th Cir. 2000) (Court has discretion to raise non-jurisdictional procedural default defense *sua sponte*).  But in the event those issues do not resolve this case, the Court has next asked a series of questions concerning the legal standards by which a defendant may prove that his ACCA-enhanced sentence was based on the statute's now-invalid residual clause.  In *Potter*, this Court resolved these questions in a way that compels rejection of Williams's arguments.  887 F.3d at 786-788.  The en banc Court should adopt *Potter*'s reasoned analysis of these issues.

### A.    Background.

1.  A district court lacks subject matter jurisdiction to address a "second or successive" Section 2255 motion unless prefiling authorization has been

---

filed any such habeas petition, and because *Anderson* remains good law, this Court need not address the availability of Section 2241 relief in this case.

granted. See *Burton* v. *Stewart*, 549 U.S. 147, 157 (2007) (per curiam). Such authorization requires a prima facie showing that the motion contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Orders granting or denying prefiling authorization are presumptively non-reviewable, see 28 U.S.C. § 2244(b)(3)(E), but an order granting authorization is tentative: it "does not conclusively resolve" the case, see *In re Moore*, 830 F.3d 1268, 1271 (11th Cir. 2016) (per curiam), but merely gives the district court with subject matter jurisdiction that it would otherwise lack to adjudicate the motion. See *Alley* v. *Bell*, 392 F.3d 822, 828 (6th Cir. 2004).

2. The district court's first task, when considering an authorized motion, is to "decide for itself," *In re Embry*, 831 F.3d 377, 378 (6th Cir. 2016), whether the authorized claim satisfies the pertinent statutory requirements, here, Section 2255(h)(2). See 28 U.S.C. § 2244(b)(4). The issue for the district court is "not whether [the defendant] has made a prima facie showing," but rather, whether he "actually meets" the statutory requirements. See *Jordan* v. *Sec'y, DOC*, 485 F.3d 1351, 1358 (11th Cir. 2007). In this way, Section 2244(b)(4) instructs district courts, performing their own gatekeeping analysis, to weed out claims that, on their face (and often decided on an incomplete record without adversarial presentation under a tight time frame), merited further examination but which,

-39-

upon further scrutiny, turn out not to satisfy the applicable standards. *Id.* If the district court determines that the claim meets the standards, it then addresses "the merits of the motion, along with any defenses and arguments" by the government, and decides whether relief is warranted. See *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013). Conversely, if the district court determines that the defendant's claim does not satisfy the statutory standards, then it "shall dismiss [the] claim." 28 U.S.C. § 2244(b)(4); see *Tyler*, 533 U.S. at 660-661, 668. District court orders granting, denying, or dismissing an authorized successive Section 2255 motion are appealable in the same way, and subject to the same requirements, as any other order finally disposing of a Section 2255 motion.

### B.    Analysis.

*Johnson* claims can justify authorization to file a successive Section 2255 motion, and, while it is questionable whether Williams was entitled to authorization in this case inasmuch as his claim rests on statutory rules, rather than *Johnson*'s constitutional rule, the propriety of granting authorization is now academic. The district court, conducting its own gatekeeping analysis, should have dismissed Williams's claim for failure to meet the Section 2255(h)(2) standard, and, for similar reasons, Williams has failed to meet his burden of proving that his sentence was based solely on the residual clause.

-40-

### 1.    *Johnson* Can Justify Orders Granting Authorization To File A Successive Section 2255 Motion.

After *Johnson* invalidated the ACCA's residual clause as vague, 135 S. Ct. at 2558, this Court held that the Supreme Court had "made" that rule retroactive to cases on collateral review for purposes of Section 2255(h)(2) because it announced a substantive rule.  See *In re Watkins*, 810 F.3d 375, 380-384 (6th Cir. 2015); accord *Welch* v. *United States*, 136 S. Ct. 1257, 1265 (2016).  *Johnson* and *Welch* thus establish that a defendant sentenced under the ACCA may obtain authorization to file a successive Section 2255 motion if he can show, as part of his prima facie burden, that his ACCA sentence was based solely on the residual clause.  See *In re Patrick*, 837 F.3d 675, 676 (6th Cir. 2016).[11/]

a.  Williams sought leave to file a successive Section 2255 motion based on *Johnson*, and the Court granted his application in part.  The court first explained that two of Williams's three violent felony convictions were classified as such under the elements clause, a clause that *Johnson* "d[id] not call into question." 135 S. Ct. at 2563; see *United States* v. *Patterson*, 853 F.3d 298, 302 (6th Cir. 2017).  And, while the panel recognized that Williams's third conviction --

---

[11/] Of course, if the defendant's *Johnson* claim is "successive," and the Court concludes that *Sanders* applies, the Court could exercise its discretion to deny authorization because the claim was raised earlier.  For purposes of this section of the brief, however, we assume the claim would proceed.

Ohio felony assault – likewise satisfied the elements clause, it suggested that the decisional basis for that holding (*Anderson*) might no longer be controlling because "much has changed in the four years since we decided *Anderson.*" CA6 Dkt. 11, at 3-4 (referencing *Descamps* and *Mathis*). Accordingly, the Court granted authorization and directed the district court to consider whether Ohio felony assault is a violent felony. *Id.* at 5-6.

The panel here arguably could have (and perhaps should have) denied Williams's request for authorization. A successive collateral attack can only be authorized when the proposed motion "contain[s]" – which is to say, is "based upon," *In re Encinias*, 821 F.3d 1224, 1225 n.2 (10th Cir. 2016) – a new rule of "constitutional" law. The "constitutional" modifier is significant, cf. *Slack* v. *McDaniel*, 529 U.S. 473, 483 (2000), because *Johnson* announced a new rule of constitutional law, but the trio of decisions undergirding the order granting authorization – *Descamps*, *Mathis*, and *Anderson* – did not: they all turned on the interpretation of the ACCA. While errors emanating from statutory interpretations are redressable in initial Section 2255 motions, see 28 U.S.C. § 2255(a) (permitting relief for, inter alia, violations of "the laws" of the United States), Section 2255(h)(2) adopts a more restrictive approach, limiting the universe of cognizable claims to those involving the Constitution, thus rendering statutory errors non-cognizable in a successive Section 2255 motion. See *Paulino*, 352

-42-

F.3d at 1059 n.2; see also *Potter*, 887 F.3d at 788; *In re Conzelmann*, 872 F.3d at 376-377. Accordingly, as other courts have recognized, *e.g.*, *In re Rogers*, 825 F.3d 1335, 1340 (1th Cir. 2016) (per curiam), a defendant who claims a prior conviction does not satisfy the elements- or enumerated-crimes clause after *Descamps* or *Mathis* cannot simply invoke *Johnson* to obtain authorization to file a successive Section 2255 motion. Any other result would sanction an end-run on the existing statutory regime. Congress, of course, is free to amend the existing regime and to allow successive motions based on statutory decisions, but unless and until it does, the "sole function" of the courts is "to enforce [the statute] according to its terms." *Dodd* v. *United States*, 545 U.S. 353, 359-360 (2005).

b. In any event, whether authorization was properly granted is no longer at issue. The gatekeeping requirements for successive motions serve a "screening function," *Felker*, 518 U.S. at 664, intended to conserve judicial and prosecutorial resources. Once a presumptively-final order granting authorization is entered, as it was here, the parties and the courts must invest resources to address the matter. Once the district court rules, the losing party may appeal, but the issue on appeal would be the propriety of the district court's ruling: retroactive scrutiny of the order granting authorization, once the resources sought to be conserved have been expended, would serve no purpose. Cf. *Young* v. *United States*, 124 F.3d 794, 799 (7th Cir. 1997) (applying similar reasoning to refuse,

-43-

following full briefing, to reconsider the propriety of a court having issued a certificate of appealability). We therefore focus on the district court's ruling.

### 2.    Williams's Motion Was Subject To Dismissal Under 28 U.S.C. § 2244(b)(4).

The district court addressed Williams's motion on the merits, and denied it because *Anderson*'s elements-clause holding was binding. Although that ruling is correct, the district court should have dismissed, rather than denied, Williams's motion under Section 2244(b)(4), because it does not satisfy Section 2255(h)(2). As noted above, Williams did not prove that his challenge to the court's reliance on his Ohio felony assault conviction was based on the constitutional rule in *Johnson* as opposed to the statutory decisions in *Descamps* and *Mathis*. *Johnson*, of course, did not concern the ACCA's elements clause, and therefore, the decision does not provide a basis for further litigation of sentences enhanced under the ACCA on the basis of that clause or the enumerated-crimes clause. See *Potter*, 887 F.3d at 788 ("*Johnson* does not reopen *all* sentences increased by the [ACCA], as it has nothing to do with enhancements under the elements clause or the enumerated-crimes clause.") (emphasis in original).

### 3.    Williams Did Not Meet His Burden Of Proving His Sentence Was Based Solely On The Residual Clause.

A defendant, like Williams, who seeks Section 2255 relief bears the burden of proving, by a preponderance of the evidence, that his ACCA-enhanced

-44-

sentence was based upon the now-constitutionally-invalid residual clause.  This

Court so held in *Potter*, 887 F.3d at 787-788, and that conclusion is correct.

a.  (i.)  Section 2255 proceedings are generally governed by the same prin-

ciples that apply in civil cases, see *Heflin* v. *United States*, 358 U.S. 415, 418 n.7

(1959), one of which is that the plaintiff bears the burden of proof.  See *Schaffer

ex rel. Schaffer* v. *Weast*, 546 U.S. 49, 56 (2005).  As the plaintiff in a collateral

attack, the defendant thus bears the burden of proving his allegations, see *Sand-

ers*, 373 U.S. at 17; *Pough* v. *United States*, 442 F.3d 959, 964 (6th Cir. 2006), "by

a preponderance of evidence," *United States* v. *Osborn*, 415 F.2d 1021, 1037 (6th

Cir. 1969), meaning he must show that it is "more likely than not," *Bourjaily* v.

*United States*, 483 U.S. 171, 175-176 (1987), that they are true.  And the substan-

tive showing – that is, what must be proven to carry this burden – necessarily

depends on the claim.  See *Metropolitan Stevedore Co.* v. *Rambo*, 521 U.S. 121, 137

n.9 (1997).  When, as here, a defendant claims that his sentence was based on

the now-constitutionally-invalid residual clause, he must show that it is more

likely than not "that the district court relied on the residual clause or, to be more

precise, relied only on the residual clause." *Potter*, 887 F.3d at 787; see also

*Dimott* v. *United States*, 881 F.3d 232, 240 (1st Cir. 2018) (defendant must show

"'it was the use of the residual clause that led to the sentencing court's enhance-

ment of his sentence'") (quoting *Beeman* v. *United States*, 871 F.3d 1215, 1221

-45-

(11th Cir. 2017)). The "relied only on" clarification emphasizes the need for the evidence to preponderate. If the evidence is in equipoise as to which clause formed the basis for the sentence, then the defendant, as the party bearing the burden, would lose. See *Rambo*, 521 U.S. at 138-139.

(ii.) Williams advances several arguments regarding the burden of proof, none of which are persuasive. His primary argument is that, when the record is silent about whether the sentencing court relied on the residual clause, courts should "assume that the ACCA sentence was based on the residual clause." Supp. Br. 37. As *Potter* illustrates, that assumption is unfounded. In *Potter*, the defendant obtained leave to file a successive Section 2255 motion after *Johnson* challenging the treatment of his Georgia burglary conviction as an ACCA violent felony. The district court denied relief and this Court affirmed, holding that Potter had not met his burden of proving that his sentence was based solely on the residual clause. As pertinent here, the Court, following decisions from the First, Seventh, and Tenth Circuits, rejected Potter's argument that the mere possibility that "the sentencing court *may* have relied on the residual clause" (887 F.3d at 788) was sufficient to meet his burden, for two reasons. First, this rule would "turn[] collateral sentencing challenges on their head" by "flip[ping] the normal burdens" in such cases, effectively relieving defendants of the need to prove their claims by a preponderance of the evidence. Cf. *Black* v. *Carpenter*,

-46-

866 F.3d 734, 748-749 (6th Cir. 2017) ("possibility" that a habeas petitioner's reported IQ score was inaccurate "does not satisfy [his] burden to prove his intellectual disability by a preponderance of the evidence"). Second, this approach would "create strange incentives" by discouraging (rather than encouraging) timely objections. To illustrate, the Court imagined a hypothetical defendant identically situated to Potter except that this defendant objected to the classification of his prior conviction as a violent felony, in response to which the sentencing court ruled that it was relying on the enumerated-crimes clause. Under Potter's "may have relied upon" approach, which Williams advocates, see Supp. Br. 34-36, the hypothetical objecting defendant is worse off – he can no longer show any possibility the court relied on the residual clause – than a defendant, like Potter, who, by not objecting, preserved at least the possibility that the court relied on the residual clause. "Why in such circumstances would the law treat Potter more favorably than the other prisoner? We can think of no good reason." *Potter*, 887 F.3d at 788.

Williams relies on *United States* v. *Winston*, 850 F.3d 677 (4th Cir. 2017), and *United States* v. *Geozos*, 870 F.3d 890 (9th Cir. 2017), but these decisions are inconsistent with *Potter* and unpersuasive on their own terms. *Winston* concluded that a possibility that the court relied on the residual clause was sufficient by following dictum in *In re Chance*, 831 F.3d 1335, 1340 (11th Cir. 2016). But

-47-

the Eleventh Circuit expressly disavowed the *Chance* dictum in *Beeman* (a decision *Potter* endorsed), holding that, "[t]o prove a *Johnson* claim, the movant must show that – more likely than not – it was the use of the residual clause that led to the sentencing court's enhancement of the sentence." *Beeman*, 871 F.3d at 1221-1222; see also *id.* at 1222 n.3 (noting rejection of the *Chance* dictum). *Winston* supported its view by asserting that a rule requiring defendants to prove reliance on the residual clause "would result in 'selective application' of [*Johnson*] * * * violating 'the principle of treating similarly situated defendants the same.'" *Winston*, 850 F.3d at 682. This reasoning is faulty. As the First Circuit explained in *Dimott* (another case *Potter* cited approvingly) when it rejected this aspect of *Winston*, "[r]equiring [defendants] to establish – by a preponderance of the evidence – that they were sentenced pursuant to the residual clause does not lead to treating similarly situated defendants differently. Precisely the opposite: it is imposing a uniform rule. That the burden is less friendly to petitioners than the one put forth in *Winston* does not make it unequal." *Dimott*, 881 F.3d at 242. Likewise, in *Geozos*, the court concluded that, because the record was "unclear" as to whether the sentencing court relied on the residual clause, the defendant had met his burden. 870 F.3d at 897. That approach effectively discards the burden of proof. To prevail, Williams had to prove that the sentencing court relied solely on the residual clause.

-48-

b. The Court's remaining questions concern how a defendant, like Williams, can attempt to meet his burden. Once again, *Potter* is instructive. It recognized that there are two primary sources of material that may be consulted: (i) the sentencing record, and (ii) case law that existed at the time of sentencing. Here, as in *Potter*, neither of these sources permits Williams to carry his burden.

(i.) The sentencing record consists of the PSR, any pre-sentencing memoranda or objections, and the sentencing transcript, some or all of which may illuminate the basis on which the sentencing court deemed a disputed prior conviction to be a violent felony. A statement by the court (if one exists) that it was relying solely on the residual clause would be evidence that the defendant could rely upon to discharge his burden. By the same logic, a statement (if one exists) that the court was relying solely on one of the two other still-valid clauses would be evidence that the defendant had not met his burden. To be sure, there will be cases where the sentencing record will not speak to the basis for the court's determination that a conviction qualified as a violent felony, often because the defendant failed to object (as was the case here). Putting to one side the procedural-default implications associated with the failure to object, see *Frady*, 456 U.S. at 162-167, the question is how such silence can or should be construed.

Silence is not equivalent to ambiguity because it can often be explained and understood in light of both common sense and ordinary background legal

-49-

principles.  Cf. *New Jersey* v. *New York*, 523 U.S. 767, 783 (1998) (silence can

often be explained in light of existing background law); see also *id.* at 813

(Breyer, J., concurring) ("silence is not ambiguity" when read against "ordinary

background law").  To illustrate:  some crimes can qualify as violent felonies, if

at all, only under the residual clause because they do not require the use of force

as an element and are not among the enumerated offenses.  Examples include

driving under the influence and escape.  In a case where a defendant's ACCA

sentence was enhanced based on this type of conviction, silence thus is not am-

biguous:  the residual clause was the only potential basis for deeming the con-

viction a violent felony.  By the same reasoning, silence as to the basis for deem-

ing an enumerated offense to qualify as a violent felony would not typically be

ambiguous:  in that setting, it is reasonable to presume that the parties and the

court treated it as qualifying under the more specific enumerated-crimes clause

rather than the general catchall.  See *Potter*, 887 F.3d at 788 (emphasizing that

the "specification of 'burglary' in the enumerated-crimes clause" undermines the

suggestion that the sentencing court relied on the residual clause); cf. *United

States* v. *Perry*, 360 F.3d 519, 535 (6th Cir. 2004) (noting the interpretive rule that

"a more specific provision takes precedence over a more general one").

(ii.) That said, silence may well be ambiguous in cases where a prior conviction could have satisfied two (or perhaps all three) clauses. Take, for example, robbery, which, under many statutes, has force as an element and also poses a significant risk of physical injury to another. Or extortion, which has those same features and is also an enumerated offense. See *Potter*, 887 F.3d at 788 (suggesting that "some crimes could satisfy all three clauses"). In cases involving these sorts of offenses, the resulting ambiguity may be dispelled by reviewing the legal landscape that existed "[a]t the time" of sentencing, which may clarify the basis for classifying a particular offense as a violent felony. See, *e.g.*, *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017). This "snapshot" approach, *id.* at 1129, is founded on the idea that, where the record is silent but extant precedent classified a conviction under one clause or another, then the reviewing court may presume that the district court followed existing law. Cf. *United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006) ("There is a presumption in the law that a district court knows and applies the law correctly."). This Court endorsed this approach in *Potter*, when, citing *Snyder*, it reasoned that, "[a]t the time" of Potter's sentencing, Eleventh Circuit case law had held that Georgia burglary (the predicate there at issue) was generic burglary under the enumerated-crimes clause. *Potter*, 887 F.3d at 788.

-51-

The temporal limitation to cases that existed "at the time" of sentencing is both important and sensible: the inquiry here is designed to gauge the basis for the sentencing court's decision at the time it imposed sentence, and the underlying assumption that the court followed any such law that existed only makes sense if the law was on the books at the time of sentencing. Thus, decisions issued after sentencing that may speak to the basis for treating a conviction as a violent felony cannot support a "presumption" that the district court relied on that as-yet-unannounced precedent; however, with that said, it may be reasonable to consider after-announced decisions insofar as they clarify pre-existing case law. See *Potter*, 887 F.3d at 788 (focusing on case law at the time of sentencing that treated Georgia burglary as an enumerated crime, but noting that cases decided "after * * * sentencing say the same thing").[12]

---

[12] This temporal approach is also consistent with the approach for determining whether a decision announced a "new rule" for purposes of *Teague* v. *Lane*, 489 U.S. 288 (1989) (plurality opinion). The "new rule" inquiry, which asks whether a rule was dictated by precedent that existed when the judgment became final, requires a court to survey "'the legal landscape *as it then existed.*'" *Graham* v. *Collins*, 506 U.S. 461, 468 (1993) (emphasis added). Yet the focus on the law "as it existed" when the judgment became final is not an absolute bar to considering after-announced decisions to the extent those decisions have "relevance" to the analysis. *Caspari* v. *Bohlen*, 510 U.S. 383, 390 (1994); see also *Lambrix* v. *Singletary*, 520 U.S. 518, 536 (1997) (decision issued after judgment became final was a "good proxy" for gauging what the law was earlier).

c.  The foregoing principles demonstrate that Williams did not meet his burden of proof.  The presentence report recommended that the court sentence Williams as an armed career criminal based on his two prior assault convictions and his domestic violence conviction, PSR ¶ 24, but did not address the basis for the probation officer's conclusion that those convictions qualified as violent felonies.  Neither party filed any written objections to the PSR, see Addendum; the sentencing transcript does not reflect any objections at the time of sentencing; and the court adopted the recommendation without further comment.  Thus, the sentencing record is silent.  And, because Ohio felony assault is not the sort of offense that can only qualify as a violent felony under the residual clause – it can satisfy the elements clause too – the ambiguity cannot be explained away.  A review of the legal landscape that existed at the time of sentencing reveals no precedent from this Court authoritatively addressing this question; indeed, to the extent anything can be gleaned, it is that both the residual and elements clauses were viable possibilities.  Cf. *United States* v. *Page*, 167 F.3d 325, 332 (6th Cir. 1999) (en banc) (noting that the district court instructed the jury that Ohio assault could qualify as a "crime of violence" predicate for a charge of interstate domestic violence to the extent that it "has as an element the use, attempted use or threatened use of physical force against the person or property of another" or

-53-

involved "conduct which by its nature presents a serious potential risk of physical injury to another"). Because either of these two bases were viable at the time, Williams has not shown that it is more likely than not that the court relied solely on the residual clause, and thus has not meet his burden.

Consideration of after-announced decisions would not change this conclusion. In 2012, the Court held in *Anderson* that Ohio felony assault can be committed "only by knowingly using force capable of causing physical pain or injury, *i.e.*, violent physical force," thereby satisfying the ACCA's elements clause. 695 F.3d at 400, 402. In 2013, the Court concluded in *Perry* that the same statute proscribes conduct that "presents a serious potential risk of physical injury to another," thereby satisfying the residual clause, 703 F.3d at 910, but in doing so, the Court did not mention, much less disturb, *Anderson*'s holding. Under the circumstances, the after-announced decisions do not support a presumption one way or the other that the sentencing court relied on the elements or residual clause in this case, leaving the record in equipoise.

d. Finally, even if Williams had met his burden of proving that his sentence was based on the residual clause, that error was harmless as it did not have a "substantial and injurious effect or influence" on the sentence. See *Murr* v. *United States*, 200 F.3d 895, 906 (6th Cir. 2000) (articulating this standard for harmless error on collateral review). An error of this sort may be harmless if,

-54-

for example, the defendant has other prior convictions that qualify as ACCA predicates under one of the valid definitional clauses, or if a conviction that was classified as a violent felony under the residual clause nonetheless qualifies as a violent felony under one of remaining valid definitional clauses, see, *e.g.*, *Welch*, 136 S. Ct. at 1268; see also *(Curtis) Johnson*, 559 U.S. at 145. For the reasons set forth in the government's supplemental en banc brief in *Burris*, any error in relying on the residual clause in this case would be harmless because Ohio felony assault remains a violent felony under the ACCA's elements clause.

## CONCLUSION

The judgment should be affirmed.

Respectfully submitted,

JUSTIN E. HERDMAN
*United States Attorney*
*Northern District of Ohio*

JOHN P. CRONAN
*Acting Assistant Attorney General*
*Criminal Division*

REBECCA C. LUTZKO
*Assistant United States Attorney*
*Appellate Chief*

MATTHEW S. MINER
*Deputy Assistant Attorney General*
*Criminal Division*

By: /s *Michael A. Rotker*
MICHAEL A. ROTKER
*Attorney, Appellate Section*
*United States Department of Justice*
*950 Pennsylvania Avenue, NW, Suite 1264*
*Suite 1264*
*Washington, DC 20530*
*(202) 514-3308*
*michael.rotker@usdoj.gov*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(f)

I HEREBY CERTIFY that the foregoing brief does not exceed fifty-five

(55) pages, as permitted by the Court's April 24, 2018 order.

/s *Michael A. Rotker*
MICHAEL A. ROTKER
*Attorney*
*United States Department of Justice*
*Appellate Section*
*950 Pennsylvania Avenue, NW*
*Suite 1264*
*Washington, DC 20530*
*(202) 514-3308*
*michael.rotker@usdoj.gov*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2018, I electronically filed the foregoing Supplemental Brief for the United States on Rehearing En Banc using the court's CM/ECF system, which will send notification of such filing to the following:

Jeffrey Lazarus, Esq.
Assistant Federal Public Defender
1660 W. 2nd Street, Suite 750
Cleveland, OH  44113

/s *Michael A. Rotker*
MICHAEL A. ROTKER
  *Attorney*
  *United States Department of Justice*
  *Appellate Section*
  *950 Pennsylvania Avenue, NW*
  *Suite 1264*
  *Washington, DC  20530*
  *(202) 514-3308*
  *michael.rotker@usdoj.govgrre*